18-1573, Leland Smith v. State of Maine Bureau of Revenue Services. Mr. Teach. Good morning, judges. I would like to reserve three minutes of rebuttal time, if I may. How many? And you have to speak up more. I would like to reserve three minutes of rebuttal time. Yes, you may have it. Thank you, Your Honor. The question posed by this appeal is one of statutory interpretation. When the automatic stay terminates under 11 U.S.C. section 362A, pursuant to 362C3A, what is the extent of that termination? Now, the appellant's position is that when the automatic stay terminates pursuant to 362C3A, it only terminates with regard to the debtor and the debtor's property and not with regard to property of the bankruptcy estate. And most courts that have addressed this question have- I saw your argument was that the clause refers only to the debtor, but now you've included the debtor's property. Where does that come from? Well, Your Honor, our argument throughout has been that under 362C3A, the stay termination is with regard to the debtor and the debtor's property, but not with regard- The language doesn't refer to the debtor's property. Do you think it's implicit? I would say Congress's use of the phrase with respect to the debtor and its use of the word property earlier in 362C3A includes both the debtor and the debtor's property. Okay. Then why wouldn't one think that with respect to also included the property of the bankrupt estate, which after all came from the debtor? Well, Your Honor, that's because the bankruptcy estate is a separate and distinct legal entity from the debtor. But isn't the property a separate and legal distinct thing from the debtor? Well, the- In other words, legally, you could do an interim action against the debtor's property just as much as you could do an interim action against the property of the estate, right? You could, Your Honor, but- That's why I didn't follow exactly what that legal- I understand that there is a legal distinction between the property of the estate and the property of the debtor, but there is also a legal distinction between the property of the debtor and the debtor. There is, Your Honor- So why have you chosen to read it so that it's inclusive of one legally distinct thing, the property of the debtor, but not another legally distinct thing, the property of the estate? Because of the way that the C-3A is written and its reference to subsection A, which- subsection A of section 362 lists which of its provisions apply to the debtor and the debtor's property, and which apply to property of the estate, and the use of the phrase, with respect to the debtor, and the reference to property in 362 C-3A includes both the debtor and the debtor's property, but Congress specifically chose not to mention property of the estate in- With respect to the debtor, suppose it read just like the report to the 1998 provision read, and it said, with respect to the debtor or property. If it read just that way, would you think it was inclusive of the property of the estate? With respect to the debtor- Or property. I still would say it does not include property of the estate because when- if they were saying the debtor or property and not mentioning specifically property of the estate or referencing the bankruptcy of state- Or property of the debtor, just as debtor or property. Right. But it's just a reference to property in the provision without saying whose property it is. And then it says, with respect to the debtor. So I understand you then say that's got to be property related to the debtor. Then the question is, is it the property of the debtor that's related to the debtor or the property of the state also that's related to the debtor? So if the statute just read with respect to the debtor or property, it would seem to me that there'd be no reason to say that the property of the estate was excluded. Your Honor, I have two answers to your question. I think you referenced the 1998 report it was? Yeah. Well, I would say that, one, the language in 11 U.S.C. section 362C3A is plain or unambiguous language, so I don't- It's the identical language almost as the 1998. But I would say reliance on, one, reliance on legislative history when interpreting plain and unambiguous statutory language is improper under the Supreme Court's guidance for statutory interpretation. Yeah, but the state's argument, while you may think it depends on their reading of legislative history, there's a large part of it that actually does not. That talks about the text, including the questions we've just now asked you. So a resort to telling us that we can't look at legislative history doesn't help you very much when we're asking about the text. And the textual reason, I would say, is that in the Bankruptcy Code's automatic estate provision, 11 U.S.C. section 362, Congress specifically, when they wanted a provision to apply to property of the estate, they used the language property of the estate. But the problem is they also use the language property of the debtor, but they never use the phrase property with respect to the debtor. Is that right? I couldn't find- is there any reference anywhere to property with respect to the debtor? Well, in 362C3A, when they refer to property earlier- So that's what I think is my problem. We know Congress used the phrase property of the debtor, and we know Congress used the phrase property of the estate. There's now a third phrase, property with respect to the debtor. Does that mean only property of the debtor? Because you would think they would just say property of the debtor. Does it mean property of the estate? Well, you'd think they could just have said property of the estate. Instead, they used this new phrase, property with respect to the debtor. So it seems hard to see how that's clear that it means only property of the debtor and not property of the estate. I think Congress, when they used the phrase with respect to the debtor, those five words being included in 362C3A, was distinguishing the application of that subsection as applying to the debtor. And because they used with respect, it has a broadening effect. It includes property of the debtor, which relates to the debtor, as opposed to the separate and distinct legal entity, the bankruptcy estate, which is created upon the filing of the bankruptcy petition. To your point of view, point of view that you espouse, don't you have to argue that this language is not ambiguous, that it's unambiguous, and therefore there is no area for trying to determine exactly what was meant here? Your argument is that this is unambiguous language, isn't that correct? That's correct, Your Honor. The language in this... On the third filing, as you know, there is no automatic stay. Your client, as the serial filer here, wants the stay ended. If he thought that he or she, as the case might be, had a case, could they not easily request an extension of the stay, and historically those have been given. The option to extend the stay is available, it was not, but you asked a couple of questions there, Your Honor. I know I did. One, yes, it's our position, it has always been our position that the language is plain and unambiguous, and I would just say that I believe, despite the call we just had this morning, the language remains plain and unambiguous. When Congress wanted to refer to property of the estate in the automatic stay provision, Congress used the phrase property of the estate. Congress chose not to do that in 362C3A. Congress included the phrase with respect to the debtor in C3A to distinguish that the stay under that subsection only terminates after 30 days after the filing of a second pending bankruptcy within a one-year period as to the debtor and debtor's property, as we discussed earlier. And if Congress had wanted it to terminate in its entirety after 30 days, there would be no need to include the phrase with respect to the debtor. They would have just written the section to say, after 30 days of a second pending bankruptcy within a one-year period, the automatic stay terminates. So an advantage of your approach is it gives effect to the phrase with respect to the debtor, whereas the minority view gives no effect to it. No plausible effect is your account.  That middle phrasing, with respect to a debt or property security such debt or a lease, on your view, did you need any of that language? Or wouldn't it read just fine if we deleted all that language and just gave effect to with respect to the debtor in the way that you want us to give effect to it? I think that language, I would say, refers to the various different provisions under 362 section A. So it's unnecessary because you could just drop it because it says a stay under subsection A, any action taken shall terminate with respect to a debtor, would work fine for you as long as we gave effect to with respect to a debtor, right? I believe that with respect to the debtor is the most important piece of that subsection. I think you're correct. But just to nail it down, on your view, you give no effect to that middle language. I wouldn't say there's no effect. What is the effect? Because as I understand it, under your view, you could just drop that language and nothing about your position would change. I'd say that is correct. And that's just what's a little bit strange about your argument. The best textual argument you have is that otherwise the phrase with respect to the debtor is superfluous, so you give it meaning. But on your own account, the very same provision you seem to concede has superfluous language in it. So that just seems to me to undermine the idea that we have to give effect to with respect to the debtor to avoid a superfluity because you concede there is one. I believe that language is included to call back to the various provisions under 362A, and that is why it was included in that subsection. I have one quick question. If we, in fact, find an ambiguity in this language, are we not in a position then to take a look at the legislative history where it's pretty clear what Congress was intending to do? Your Honor, if the court makes the determination, contrary to our position, if the court determines the language to be ambiguous, then yes, legislative history may be considered. But I would just note that much of the legislative history that the appellee has referenced, the 1998 report that was mentioned earlier being one example, is taken from previous Congresses and not the Congress that was seated in 2005 when 11 U.S.C. section 362C3A became part of the bankruptcy code. So congressional reports from previous Congresses cannot be evidence of the intent of the specific Congress that voted in 11 U.S.C. section 362C3A. As to that Congress, the correct Congress, all we have is a report of a House Judiciary Committee. We don't have a House report. We don't have a Senate report. We don't have a conference report. Is that right? I am not certain if there's anything additional from the specific Congress in 2005. I would have to look, Your Honor, and see if there's anything more. We also have the Supreme Court sort of one-line summation that the purpose of these amendments was to curb abuses by repeat filers. Correct? The Supreme Court did say that, and I would say that 11 U.S.C. section 362C3A as terminating the stay after 30 days for the debtor and debtor's property, but maintaining the stay for property of the state for a debtor filing their second bankruptcy pending within a year does that, Your Honor, accomplishes that purpose. Okay. Thank you. Thank you, Your Honor. Good morning, Your Honor. I guess I'll pick up where the Court was just discussing with Mr. Keech about, well, actually the first point the Court made about I think you'll have to speak up at this point. The first point the Court made, that isn't the inclusion of the debtor's non-estate property implicit under his construction. We absolutely think that's true. There are other textual distinctions between property of the estate and non-estate property found in 362 itself. For example, 362B2B says that the stay shall not bar domestic support obligation creditors from collecting against property that is not included in the estate. And then Mr. Keech cited two provisions in his reply brief that also have clear textual distinctions between estate property and non-estate property, and that is 362H1. I believe it says property of the estate or the debtor. And then the other one would be B2C that says property of the estate or property of the debtor. So there's three clear textual distinctions in 362 that when Congress intends to distinguish between estate property and non-estate property and knows how to do so, has done it several times in 362 itself, it didn't do it in C3A. So that's the first point that we believe that the non-estate property coupled with the debtor is an implicit distinction that needs to be read into the text. But I don't think that gets you all the way home because the puzzling thing is that they didn't draw the distinction. They just referred to property with respect to the debtor. So what does that mean? Well, we believe that with respect to language is a distinction between the debtor that has the requisite filing history that triggers the application of the statute and a debtor spouse that doesn't have that requisite filing history. Okay. I'd like you to assume we're not impressed with that argument. Okay. Now, what other arguments do you have? There is a fairly compelling argument that Judge Woodcock made in his opinion that with respect to the debtor is mere surplusage. It's used several times to the statute and at least on 10 different occasions there's an argument to be made that it means absolutely nothing. And we think that it could mean absolutely nothing in this context. But you see, that's a little contrary to the notion that the phrase implicitly encompasses the property of the estate because where else did the property come from? There's a sort of distinction in my mind between surplusage and reading the language with respect to the debtor to mean it is meant to exclude the property of the estate. Are you following me? I think so, yes, Your Honor. Okay. So does the surplusage argument harm the argument that Congress actually meant by using the phrase with respect to the debtor to encompass estate property? I don't think so. I think the language is ambiguous. It just adds to the ambiguity. That's right. There's superfluidities on both sides. That's right. There's superfluidities on both sides. Both constructions perhaps render certain provisions. Not with respect to this phrase, though, just to be clear. Their interpretation of the phrase gives it effect. Your interpretation of it does not. If you're unimpressed with the argument that it distinguishes between the two spouses, then it is perhaps surplusage. But there's also phrases used elsewhere in the statute as well. For example, in 707B2DII, it says with respect to the debtor, that provision talks about the abuse of, if you're a Chapter 7 debtor and you have too much income, then if you file a Chapter 7, it's an abuse of the process, or it's presumptively an abuse of the process. And that provision excludes from that calculation earnings that are based on national defense activities. If somebody's stationed abroad and gets paid Army pay or pay like that, then that is excluded. And if you give the construction with respect to the debtor that my friend wants to give it, then it cannot mean in that context that it's a distinction between the debtor and the debtor's non-estate property on one hand and the debtor's estate property on the other hand. In that context, I think it clearly is a distinction between the spouses. Okay. So there's an interesting amicus brief that has been filed in this case that says, more or less, Congress drew a distinction between second time and third time. Third time, you don't get a stay at all. Second time, even reading it the way the debtor wants to read it, Congress has made some adjustments that make life a little more difficult for the debtor. He, if he wants to extend the stay, he has to overcome a presumption of your face, and I assume he'd have to file it within the 30-day period. And they say, and furthermore, if the debtors go out and go to the trouble of getting a judgment, they can then make the harassing phone calls that they want to make to bludgeon debtors into payment. So what's the response to that? A couple of things. First of all, as a practical matter, if the termination of the stay is, as Mr. Key suggests, that all we're going to be able to do is make dunning calls or reduce our claims to judgment. Well, you can't even make the dunning calls, right, until you reduce your claims to judgment. Perhaps. If we were, I think we would be, we're my client's main revenue services, we have statutory administrative powers, so perhaps we wouldn't need a judgment to make those types of phone calls. But there's a Law Review article from Mr. Meltzer where he cites McParrick's. He's actually done an analysis, and in jurisdictions where the majority view controls, there has been no reported decision where a creditor challenged the extension of the automatic stay, and the automatic stay was denied. You know, it's fine to do an analysis of the effects of a statute after it's enacted, but it's a little tough for us to then say, and Congress had this in mind before it enacted the statute. And more fundamentally, as to that point, we believe that C-3 is along the continuum, that as the number of cases that you file without getting a discharge, or a case being dismissed without getting a successful completion of the plan, the protection of the automatic stay decrease. So on one end of the spectrum is 362A, which the stay comes into effect automatically, it's enduring, it's protracted, it remains in effect unless and until there's an order by the Bankruptcy Court on 362D that makes some adjustments to the scope of the automatic stay. On the other end of the spectrum is C-4, which is where you have a third file case in a rolling 12-month period. There's no automatic stay whatsoever, and the onus is on the debtor or another party in interest to come in, file a motion, and get the stay reimposed. We believe that the construction that Judge Fagoni offered, the bankruptcy judge below, that the automatic stay terminates in its entirety as to any abusive file and debtor on the 30th day. The problem with that is that there's just so much space between those two poles. That's true. And then if the middle space was filled in by a provision that was clean with a 30-day cutoff, and therefore looked like the first part of the pole, or clean and looked like the last one, your case would be simple. But instead, this middle provision's got all these extra words in it. And so one starts to wonder, what's the point of all those extra words if it's supposed to just operate like a clean termination after 30 days? And then just adding that, the case that most worries me is, if I understand it right, if you're a pro se applicant and you just make a technical mistake, not advised by an attorney because you're pro se, under the statute, you don't have much recourse for getting an extension of the stay. Is that right? If you are in the second case? Yeah. You're just out of luck, and all you did was make a mistake because you were pro se. But if, that's true. So why would Congress set it up that way? It just seems odd to me. Whereas it makes a little bit more sense, particularly when, and this is the other point that I'm just a little bit worried about, even from a creditor perspective, Williams points out that it's not all to the good for creditors to have the stay blow up, because then you've got a free-for-all. So would it really make sense to think that a pro se debtor who makes a technical mistake now is disabled from getting the stay in place when they correct the mistake? And the price of that is going to be borne by a free-for-all amongst all the creditors? It just seems, that's a pretty big consequence. To your question about the potential burden on the creditors, the creditors do have standing in and of themselves to seek extension of the stay. So just because a pro se debtor doesn't do it. What ground can they give for it? It's the same standard that the second case is filed in good faith as to the creditors to be stayed. But the provision says that it shall not be a defense. If there was inadvertence or negligence when you were not advised by an attorney. They would have to file the motion within the 30-day window and get the determination within that 30-day window. But what could they show to get the stay extended if the reason for the initial dismissal was a pro se technical error? Is there any way to get that stay in place? They could show that the next case, if it's a Chapter 13, they could show that the latter case is going to result in a confirmed plan that's going to be completed for discharge. If it's a 7, they could show that the... But there's no change in the circumstances of the debtor between the first and the second case. Because all he did was make a technical error the first time. That's why it was dismissed. I had thought that the good faith language gave the bankruptcy court some discretion there to excuse pro se technical errors. It may be that the other language... Takes it away, it seems to say. But it's not a defense. But it's... Well, it may depend on what technical error means. I guess... I think... I guess the provision you're saying is that the only... the only reason they got it dismissed is because they missed... they didn't file their certificate of accredited counsel or something like that. They didn't understand the complicated rules. That, I think, would be a factor in the good faith analysis. But how difficult would it be for that pro se filer to get the stay reinstated? I think not very difficult. In the second case? I think that's correct. I'm trying to figure out how. What's showing would they... They then file another one, then they've got a third one. So then it just shall not take effect. In the third case, they would have an opportunity to reimpose the stay. They could file their motion and say that we... the technicality notwithstanding, this case is going to result in a discharge. We're going to get a plan confirmed and we're going to pay our creditors or court... That's an exception to four? That's four. The stay doesn't come in. But you have an opportunity to get the stay reimposed during the 30-day window by filing a motion saying that this case is going to be... And you don't have to show changed circumstances? The change in circumstances creates a presumption. That can be rebutted by showing that the case is going to result in a discharge or a confirmed plan that's going to be successfully completed. So the lack of change in circumstances creates a presumption of lack of good faith that can be overcome by showing that you're going to result in a discharge or a confirmed plan that's going to be successfully completed and paid. So I think you could overcome the presumption and the case... As long as you've got a serious case, you're going to be able to get the stay. And as long as you've got a serious case, then most creditors are going to sit back and let you get to a confirmed plan and let the money flow. Just because they have the stay terminated doesn't mean they're going to act immediately. I think the idea is that it gets... It incentivizes the debtor and the debtor's counsel to get their plan confirmed quicker so the money can start flowing to the creditors. There's plenty of reason why creditors want debtors in bankruptcy. They're there. We know where they are. We can find them. They have counsel. There's a trustee. They have an incentive to make payments, discharge at the end of the day. So just because the stay is terminated doesn't mean they're not going to have a fair opportunity to get to a confirmed plan. Once the plan is confirmed, the confirmation order would negate a lot of what happened prior to because that's binding on the creditors. And if your plan is provided for in the plan, you don't have many self-help remedies available to you at that point. Can I ask just a pragmatic question? Why is the Maine Department of Revenue pursuing this case? He says, look, I've got $200,000 in debts. Even if you look at the property of my estate, there isn't very much there. I'm just sort of curious. You're in the Court of Appeals. You've taken this up. You've argued it both sides very well at three different stages. You put a lot of money into the case. So why are you pursuing it? At the time that the issue came up, there wasn't a confirmed plan. Mr. Smith had had a checkered file in history. He had had two plans, two cases that had gone to confirmation, made payments for years, and then he stopped making payments. And also during those cases, he accrued substantial post-petition tax obligations. So there was cause in our mind that this may be another case where we're going to be stuck with an automatic stay in a case that doesn't have any viable legs. And we took action to say, you know, we want the estate terminated here. We're happy to see if this plan plays out. But if he becomes noncompliant again, then we have a Plan B in place. But does that mean that in this case, if he then makes the motion to get it reinstated, you wouldn't contest it? He didn't file a motion. I know it. Probably not, because at the time, all we had was the prior file in history. And this case just goes away if he now files a... No, I think that the statute, the overwhelming majority of case law says that once the stay is terminated, after the 30th day, you can't then come back and get the stay reimposed. No, but he just files in a third one. And then under that provision, he then moves to say, I know it never took effect, but I now have a confirmed plan that could get in place. And then you wouldn't contest it. So what are we fighting about? If he dismissed his case, then perhaps we wouldn't. But you're leaving your options open. We are. We are. I mean, just because he gets his plan confirmed doesn't mean he's going to complete the plan. 60% of Chapter 13 cases fail. Just because you get a plan confirmed doesn't mean he's going to complete that plan. So we may contest the stay, but we may hold it in our back pocket and see if the third plan actually materializes and he gets to a discharge. Thank you. Thank you. You reserve three minutes, I believe. Yes, Judge, there's one particular subsection of the automatic stay provision. Bring it down. Thank you. One particular subsection. I'd like to specifically draw the Court's attention to is 11 U.S.C. section 362C1, which states that the stay of an act against property of the estate under subsection A continues until the property is no longer property of the estate. And 362C3A contains no mechanism to remove property from the estate. The stay, there's no dispute that in a case where 362C3A applies, a second pending bankruptcy within a year, the automatic stay takes effect upon the filing of a bankruptcy petition. Because the stay takes effect as to property of the estate on the filing of that petition, 362C1 says that that stay remains in place as to the property of the estate until the property is no longer part of the estate. The telling distinction here is when you look at 362C4A1, the sort of the bottom tier, if you're looking at it as Congress trying to make three tiers of treatment based on the number of pending bankruptcies within a year, no stay takes effect under C4A1. So stays against acts of property of the estate under where it's a third pending bankruptcy in the year, there's no stay, so there's no property that needs to be removed from the estate because there's no stay in place to begin with. Under C1, which would apply in the bankruptcy underlying this appeal, acts against property of the estate were stayed upon the filing of the appellant's bankruptcy petition for the case that remains active. The property that is property of the estate never came out of the estate, so the estate could not terminate under the plain language. The property that never came out because he failed to make the payments he was required to make once the plans were confirmed. Is that what happened? No, Your Honor. I'm referring to the current bankruptcy case, the one that's the second pending bankruptcy case that was filed within a year, not the one that was dismissed. So when the second bankruptcy was filed, that petition triggered the automatic stay under 362A, just as it would for a first bankruptcy petition. Is your point just that C3 on the appellee's view has to be an exception to C1, but it does not have to be on your view? Is that right? I think that's correct, but I would go further, Your Honor. Textually, there's no indication that C3 can be an exception. Correct. I think there's no way to read C3A under the minority view without reading it in direct conflict and I'd say in violation of C1, and I think Congress, when it wrote... The only way it records on it is if you just say impliedly C3 is an exception to C1. You would have to read that in, but there's nothing in the language to indicate that it's intended as an explicit exception to the plain language of C1, Your Honor. Can I say one last thing before you sit down? This is the party and interest point that we haven't talked about, but there is this provision that the party and interest can seek extension of the stay, and on your view, who is that party and interest other than the debtor? It's correct. The debtor is a party and interest. Other than the debtor, who is there? I would say that the creditors are parties and interest. Creditors can move for extension of the automatic stay. They might have reason to do so. Creditors might, and I would say creditors in a lot of cases would absolutely have reason to do so. Many creditors, particularly small dollar creditors, may feel that they would receive more on their claims through the bankruptcy process and by the property of the estate, the stay remaining in place and preventing the big creditor from going after, say, property of the estate in, say, a state court action and removing the largest assets from the bankruptcy estate. I would also say that trustees, particularly a Chapter 7 trustee to which this provision also applies, may want the stay to remain in place of the property of the estate longer than 30 days. If the minority view was correct and it terminated, assuming argument of that happened, a trustee would be another party and interest who would have reason to move for an extension. I believe Judge Stahl has something to say. Sorry, Your Honor. I'm done. Okay. Thank you. I'm going to give the State a chance to respond to the new argument you've just inserted in rebuttal. On the point about the party and interest, if the State... No, not the party and interest. The other point. The C-1? Yeah. We read C-1 and C-3 such that C-1 doesn't apply if there's no automatic stay under C-362A. Okay. So 361, 362C-1 and 360... But there is an automatic stay under C-3. It terminated. Not... Once the stay is terminated, there's no... But there was a stay in place and it terminates before C-1 allows it to terminate. That's his whole argument. C-4 is not a problem because there's never a stay in place. But his point is that there is a stay in place and it terminates prior to the time C-1 allows a stay to terminate. I believe it says that... The C-1 says that acts under subsection A are stayed until such time as State property is no longer a State property. But once the stay is terminated, there is no stay under subsection A such that you can say C-1 and C-3... C-1 and C-3, but harmoniously, is that, like you said, I think it's not an implied distinction. I think it's an explicit exception because there is no stay under 362A. So C-1, by its term, doesn't no longer apply. What about during the 30-day period when there is a stay? Then we're stayed. Stayed. At that point, we couldn't... The only way we could get to a State property is to get relief from automatic stay. But once the stay is terminated, there is no stay under A. Thank you both.